**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSAN E. GUNSALLUS, | No. 4:21-CV-00368 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNIVERSITY OF PITTSBURGH MEDICAL CENTER, | |
| Defendant. | |

**MEMORANDUM OPINION**

**JANUARY 4, 2022**

## I.    BACKGROUND

On February 26, 2021, Plaintiff Susan E. Gunsallus filed a five-count complaint against Defendant, University of Pittsburgh Medical Center ("UPMC"). Gunsallus alleges violations of the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), and Pennsylvania Human Relations Act ("PHRA").

On May 3, 2021, UPMC filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The motion is now ripe for disposition; for the reasons that follow, it is denied in part and granted in part. UPMC is ordered to file an answer.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a claim"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

---

[1]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2]   *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[3]   *Id.* at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4]   *Id.* at 327.

[5]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[6]   550 U.S. 544 (2007).

[7]   556 U.S. 662 (2009).

[8]   *Id.* at 670.

[9]   *Id.*

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]  No matter the context, however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept

---

[10]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[11]  *Id.*
[12]  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (cleaned up).
[13]  *Twombly*, 550 U.S. at 556.
[14]  *Iqbal*, 556 U.S. at 679.
[15]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).
[16]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

A plaintiff in an employment discrimination case does not need to establish a prima facie case in his or her complaint. The Third Circuit clarified this point recently, stating: "a complaint need not establish a prima facie case in order to survive a motion to dismiss."[20]

## B.   Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

---

[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[18] *Id.  See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").
[19] *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted).
[20] *Id.* at 788.

Gunsallus suffers from panic disorder, depression, and post-traumatic stress disorder.[21]   These conditions affect her basic life functions.[22]   But reasonable accommodations such as lifting assistance, training, feedback, etc. can ameliorate these conditions' impact.[23]

In April 2020, Gunsallus notified her UPMC supervisors of her disabilities.[24] And on numerous occasions, Gunsallus requested the accommodations above.[25]  But UPMC refused to grant these accommodations or propose any others.[26]

UPMC also unjustifiably disciplined Gunsallus, gave her unsatisfactory performance evaluations, and threatened to terminate her.[27]  Moreover, Gunsallus's supervisors turned her patients against her and solicited them to submit complaints without merit.[28]   And when Gunsallus applied for other jobs at UPMC, UPMC refused to consider her.[29]

## C.    Analysis

### 1.    Disability Discrimination

First, Gunsallus claims that UPMC violated the ADA and PHRA by discriminating against her because of her disabilities.  "A plaintiff presents a prima

---

[21]  Doc. 1 at ¶ 14.
[22]  *Id.* at ¶ 17.
[23]  *Id.* at ¶ 18.
[24]  *Id.* at ¶ 28.
[25]  *Id.* at ¶ 19.
[26]  *Id.* at ¶ 25.
[27]  *Id.* at ¶¶ 29, 40.
[28]  *Id.* at ¶ 35.
[29]  *Id.* at ¶ 31.

facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[30]  "Adverse employment decisions in this context include refusing to make reasonable accommodations for a plaintiff's disabilities."[31]

Here, Gunsallus suffers from panic disorder, depression, and post-traumatic stress disorder.[32]  She notified her supervisors of these conditions in April 2020.[33] And on numerous occasions, Gunsallus requested accommodations, including lifting assistance, training, etc.[34]  With these accommodations, Gunsallus could have performed her duties.[35]  And though these accommodations did not present an undue burden or hardship on UPMC, UPMC refused to grant them.[36]

Taking these allegations as true, as this Court must, Gunsallus has stated a claim of age discrimination.  UPMC's motion to dismiss is therefore denied as to Gunsallus's claims of disability discrimination under the ADA and PHRA.

---

[30] *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

[31] *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004).

[32] Doc. 1 at ¶ 14.

[33] *Id.* at ¶ 28.

[34] *Id.* at ¶¶ 18–19.

[35] *Id.* at ¶ 23.

[36] *Id.* at ¶¶ 22, 25.

###        2.        Retaliation

Relatedly, Gunsallus claims that UPMC violated the ADA and the PHRA by retaliating against her for requesting reasonable accommodations.  "To state a claim for retaliation under the ADA, an employee must show 1) she engaged in a protected activity; 2) the employer took adverse action; and 3) a causal connection."[37] Gunsallus alleges facts supporting each of these three elements, so her retaliation claims survive.

For example, Gunsallus alleges that she requested accommodations and complained to her supervisors and Human Resources.[38]  At the pleading stage, these allegations permit an inference that Gunsallus engaged in protected activity.[39]

In the retaliation context, adverse actions are those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[40]  And Gunsallus alleges that UPMC unjustifiably disciplined her, issued unsatisfactory performance evaluations, and threatened her with termination after she engaged in protected activity.[41]  Gunsallus also alleges that her supervisors

---

[37]  *Castellani v. Bucks Cnty. Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009).
[38]  Doc. 1 at ¶¶ 19, 38.
[39]  *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) ("Protected activity includes . . . requesting an accommodation.") (internal quotation marks and citations omitted); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) ("Protected activity for purposes of a prima facie case of retaliation does not mean a formal action against the employer.  'Opposition' to discrimination under the retaliation provision 'can take the form of informal protests of discriminatory employment practices, including making complaints to management.'") (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir.2006)).
[40]  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)  (internal quotation marks and citation omitted).
[41]  Doc. 1 at ¶¶ 29, 40.

turned patients against her and solicited them to submit complaints without merit.[42] Such allegations permit the inference of actions that might well have dissuaded a reasonable worker from requesting accommodations or reporting discrimination.

As for the causal connection, "a pattern of antagonism following the protected conduct can also give rise to the inference."[43]   Again, Gunsallus alleges that after she requested accommodations, UPMC unjustifiably disciplined her and threatened to terminate her.[44]   She also alleges that her supervisors turned patients against her and solicited them to submit complaints without merit.[45]   If true, these allegations permit an inference of a pattern of antagonism and therefore causation.   Accordingly, UMPC's motion to dismiss is denied as to Gunsallus's retaliation claims.

### 3.   Age Discrimination

Next, Gunsallus claims that UPMC violated the ADEA and the PHRA by discriminating against her in favor of younger individuals.   "The elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."[46]   "Where the plaintiff is not directly replaced, the fourth

---

[42]   *Id.* at ¶ 35.
[43]   *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).
[44]   Doc. 1 at ¶ 29.
[45]   *Id.* at ¶ 35.
[46]   *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."[47]

Here, Gunsallus is sixty-three years old.[48]  And when Gunsallus applied for other positions she was qualified for and could perform, UPMC allegedly rejected her in favor of younger individuals.[49]  UPMC also reassigned her job duties to younger individuals.[50]  At the pleading stage, these allegations permit an inference of age discrimination.  Thus, UPMC's motion to dismiss is denied as to Gunsallus's age discrimination claims under the ADEA and PHRA.

### 4.    Constitutional Claims

Finally, Gunsallus claims that UPMC's conduct violates the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.[51] A § 1983 plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor."[52]  But Gunsallus does not indicate that UPMC, a non-profit corporation, is a state actor.  Nor does she allege facts permitting such an inference.  Thus, Gunsallus's constitutional claims against UPMC are dismissed.[53]

---

[47]  *Id.* (internal quotation marks and citation omitted).

[48]  Doc. 1 at ¶ 24.

[49]  *Id.* at ¶¶ 30–31, 71.

[50]  *Id.* at ¶ 37.

[51]  *Id.* at ¶ 74.

[52]  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

[53]  *See Hartle v. UPMC Northwest*, 2019 U.S. Dist. LEXIS 131617, at *11 (W.D. Pa. Aug. 5, 2019) ("It is evident from the complaint and the allegations therein that UPMC Northwest, UPMC Hamot, . . . are private corporations . . . rather than state actors.  As such, Plaintiff's § 1983 claims against these private entities must be dismissed for failure to state a claim.").

## III.   CONCLUSION

UPMC's motion to dismiss pursuant to Rule 12(b)(6) is denied as to Gunsallus's employment discrimination and retaliation claims. But it is granted with prejudice as to Gunsallus's constitutional claims. Leave to amend these constitutional claims is not granted.

"Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[54] Amending Gunsallus's constitutional claims would be futile and cause undue delay because she does not even attempt to allege that UPMC is a state actor. Indeed, Gunsallus's brief in opposition to UPMC's motion to dismiss does not mention these constitutional claims, which comprise only one sentence in her complaint.[55] As such, UPMC will be given twenty-one days from today's date to file an answer to the surviving claims in Gunsallus's complaint.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[54] *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).
[55] Docs. 1, 7.